**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

**HDDA, LLC, successor in interest to**
**ACCESS POINT FINANCIAL, LLC,**

      **Plaintiff,**

**v.**

**SANGHA HOSPITALITY, LLC,**

      **Defendant.**

**CIVIL ACTION FILE NO.**
**5:22-cv-00021-MTT**

<u>**ORDER APPOINTING RECEIVER AND**</u>
<u>**GRANTING RELATED INJUNCTIVE RELIEF**</u>

THIS MATTER was before the Court for hearing on July 21, 2023 based on the Verified Complaint (the "<u>Verified Complaint</u>") and accompanying Amended Expedited Motion for Appointment of a Receiver and for Related Injunctive Relief and Memorandum of Law in Support (the "<u>Motion</u>") filed by Plaintiff HDDA, LLC, successor in interest to Access Point Financial, LLC ("<u>HDDA</u>" or "<u>Plaintiff</u>"). Due and sufficient notice to Defendant Sangha Hospitality, LLC ("<u>Defendant</u>" or "<u>Sangha</u>" or "<u>Borrower</u>") and other interested parties of the Verified Complaint, Motion, and the expedited hearing before this Court has been given. Having read and considered the Verified Complaint, the Motion, and the arguments and statements of counsel, and it appearing that venue and jurisdiction are proper in this Court and the relief ordered herein is appropriate, it is hereby:

**ORDERED, ADJUDGED, AND DECREED** as follows:[1]

1.      The Motion is hereby GRANTED as set forth herein.

2.      Master Innkeepers, LLC, an operating affiliate of Great American Hotel Group, be, and hereby is, appointed to serve as receiver (in that office and capacity hereinafter referred to as the "Receiver") for all of the property and assets of Defendant as to which Plaintiff holds any lien, collateral assignment or security interest (collectively referred to as the "Collateral"), including, without limitation, the following:[2]

    a.  All property, including without limitation, all real property, personal property, leasehold interests, fixtures, improvements, leases, subleases, licenses, rents, revenues, income, proceeds, profits, security, goods, furniture, and/or fixtures located or situated upon and any and all other types of deposits or property (collectively, the "Property") described in or subject to: that certain Deed to Secure Debt and Security Agreement dated January 19, 2018, executed by Borrower in favor of Access Point and recorded at Book 10065, Page 319-349 in the land records of Bibb County, Georgia ("Security Deed"); and that certain Assignment of Leases and Rents dated January 19, 2018, executed by Borrower in favor of Access Point, at Book 10065, Page 350-360 in the land records of Bibb County, Georgia (the "ALR"); that certain UCC financing statement showing Access Point's interest in the Equipment recorded on January 31, 2018 at Filing No. 11-18-000250 in the lien records of Bibb County, Georgia (the "Financing Statement"); and that certain fixture filing showing Access Point's interest in the

---

[1] Capitalized but undefined terms used in this Order shall have the meanings given to such terms in the Motion.

[2] Nothing in this Order shall grant to Plaintiff a lien on any property in which it heretofore does not have a lien. To the extent the descriptions of the Collateral herein are inconsistent with those in the security documents executed in favor of Plaintiff, the security documents will control.

Equipment recorded on January 31, 2018 at Book 10067, Page 326-354 in the land records of Bibb County, Georgia (the "Fixture Filing") (hereinafter, the Security Deed, the ALR, the Financing Statement, and the Fixture Filing shall be collectively referred to herein as the "Security Instruments");

b. All business records of the Borrower or copies thereof necessary for the operation, maintenance and marketing of the Collateral (collectively, the "Records"), including, but not limited to, all books of accounts, financial statements, balance sheets, ledgers, expense statements, logs, journals, reports, licenses, permits, agreements, and all other electronic data and tangible documents relating to the past or future use, operation or maintenance of the Collateral.

All obligations owed by the Borrower to Plaintiff are hereinafter collectively referred to as the "Borrower Obligations".

3.     The Receiver shall serve for a period commencing within five (5) days within the date of entry of this Order and ending upon termination of such appointment by further Order of the Court.

4.     The Receiver is hereby authorized to take immediate possession of, hold and secure all of the Collateral, including, without limitation, the Property and the Records, and to preserve and take charge of all the leasehold interests and Collateral relating to the use and operation of the Property. The Borrower, each of its respective officers, directors and representatives, and all other affiliates of the Borrower, are hereby ordered immediately to surrender to the Receiver the possession, use, occupancy and control of the Collateral, including, without limitation, the Property and the Records. The Borrower and each of its respective

officers, directors and representatives, and all other affiliates of the Borrower, are hereby ordered immediately to turn over, surrender and deliver to the Receiver any Collateral in the possession, custody or control of any of them.

5.     The Receiver shall have all of the rights and powers permitted under the State of Georgia and applicable law. The Receiver is hereby authorized and empowered to take any or all of the following actions:

    a.   to take immediate possession of and to use, maintain, preserve and protect the Collateral, to the exclusion of the Borrower and all others (except Plaintiff and governmental authorities exercising their police powers to protect public health or safety); to secure (including, without limitation, changing locks), hold, retain, preserve, protect, maintain, and manage the Collateral; to marshal the Collateral; and to receive all rents, income, license fees and revenues arising from or relating to the operation, sale or other disposition of any of the Collateral (collectively, the "Revenues");

    b.   to enter into any necessary licensing and/or franchise agreements with the applicable franchisor hotel group, as may be reasonably necessary to operate the Collateral, including without limitation the Hotel. Notwithstanding the foregoing, the Receiver shall not be responsible or liable for any pre-receivership franchise fees, including without limitation any back charges or back fees;

    c.   to issue demand upon the U.S. Postal Service to grant exclusive possession and control of mail and instrumentalities thereof, including postal boxes, as may have been used by Defendant, and may direct that certain mail related to the Collateral and its business be re-directed to the Receiver;

d.   with written consent of Plaintiff, to make claims pursuant to any insurance policy relating to the Collateral or any portion thereof on behalf of the Borrower and/or its affiliates, and any of the Borrower's or its affiliates' respective officers, and/or directors, and to collect and preserve any such insurance proceeds received. Any insurance proceeds so collected and received by the Receiver shall be immediately remitted to Plaintiff pursuant to the terms of the Security Instruments and their related loan documents and instruments;

e.   to employ and compensate such contractors, subcontractors, architects, engineers, consultants, independent contractors, attorneys, accountants, agents and other professionals as the Receiver may from time to time deem appropriate on such terms and conditions as the Receiver deems appropriate, provided the amount of compensation paid to such parties must be comparable to that charged by similar parties for similar services;

f.   to notify any account debtors of the Receivership estate, and any other person obligated to make payment to the Receivership estate, to make payment on any accounts or other monetary obligations directly to the Receiver; to take any and all actions that are necessary or appropriate in connection with recovery and collection of the accounts; to file suit in any appropriate jurisdiction to collect any amounts owed to the Receivership estate and otherwise to bring and defend actions to recover and preserve the Collateral; and with the prior express consent of Plaintiff, to sell, settle or compromise any amounts owed to the Receivership estate;

g.  with the prior consent of Plaintiff, and order of the Court after no less than ten (10) days notice to the Borrower and any other interested parties of record and an opportunity to object, (i) to sell, lease or otherwise dispose of all, substantially all, or any material portion of the tangible Collateral, (ii) to execute and deliver such deeds, bills of sale and other related documents in order to transfer all of the Borrower's right, title and interest in and to any of the Collateral to any purchaser, and (iii) in all events, to deliver at closing all proceeds of Collateral, net of (1) first, satisfaction of unpaid receivership expenses permitted to be paid hereunder, including without limitation repayment to Plaintiff for any Advances (defined below) which shall be deemed first-priority expenses from such proceeds for all purposes over and above all other liens and encumbrances, and (2) second, in satisfaction of senior liens on the Collateral, and then (3) third, to Plaintiff for application to the Borrower Obligations, except as may be otherwise expressly agreed by Plaintiff, with the excess proceeds, if any, to be paid to other lienholders junior to Plaintiff, if any, in order of priority, and then to the Borrower, or any bankruptcy trustee appointed for the Borrower;

h.  to pay from the Revenues the actual and reasonable expenses of the receivership, including expenses for management fees, heat, light, water, other utilities, supplies, insurance, ordinary and necessary repairs, protecting the Collateral against damage, and the repair and maintenance of any of the Collateral;

i.  to pay the Receiver for reasonable expenses and fees incurred in amounts and on terms set forth in this Order, which payments may be made monthly from the Revenues or from Advances (as hereinafter defined);

j. after payment of the current reasonable operating expenses related to the Collateral, to pay over to Plaintiff any surplus of Revenues for application to the indebtedness owed to Plaintiff; provided, however, that the Receiver may withhold a minimum of $50,000 in working capital;

k. to take possession of, or issue demands for, the freezing and turnover of funds upon any financial institution that Receiver has determined is a depository of funds belonging to, or arising from, Defendant and/or the Collateral, whether such accounts be titled in the name of either Defendant or not, and to indemnify the institution upon which such demand is made on behalf of the receivership estate if Receiver deems such indemnification necessary. All banks and other financial institutions, upon presentation of a copy of this Order, shall: (i) provide access to any bank accounts titled in the name of Defendant or pertaining to the Collateral and copies of any requested records regarding any such accounts to Receiver; (ii) operate, maintain, open, transfer, close and/or change all bank and trade accounts required for the ordinary operation of the Collateral, so that all such accounts are in the name of Receiver; provided, however, that Receiver shall deposit monies and funds collected and received in connection with receivership estate, and/or the Collateral at federally-insured banking institutions or savings associations that are not parties to this action; (iii) take possession, custody and control of all credit card merchant accounts, and related deposits, such as Visa, MasterCard, American Express, Discover and otherwise required for the ordinary operation of the Property, whether such funds be in accounts titled in the name of Defendant or not, and to take all reasonable steps necessary to enter into, maintain compliance

under, or secure the continuation or renewal of such agreements affecting the Collateral; and (iv) utilize any federal or state taxpayer identification numbers relating to the Collateral (including those of Defendant) in connection with the Collateral. Receiver shall maintain a bank account insured by the FDIC (the "Account"), into which it shall deposit all funds that it receives and from which it shall pay any authorized expenses and costs incurred during the duration of the receivership. Receiver may open as many bank accounts in the name of Receiver as it may deem necessary to fulfill its duties pursuant to this Order;

l.  to deal with all existing and prospective subcontractors, brokers, vendors, counterparties, credit card processors, suppliers, distributors, customers, licensors, licensees, landlords, tenants and subtenants of the Borrower, including, without limitation, by way of negotiating and executing leases, licenses, and other agreements and any amendments, renewals, extensions, modifications, or waivers of any leases, licenses, or other agreements between the Borrower and any such existing or prospective subcontractors, brokers, vendors, counterparties, suppliers, distributors, customers, licensors, licensees, landlords, tenants and subtenants of the Borrower;

m.  to lawfully remove any persons residing in, occupying, inhabiting, or otherwise using the Collateral as a place of shelter or an abode and to lawfully exclude such persons from gaining reentry to the Collateral;

n.  to execute, enforce, cancel, modify, renegotiate, abrogate, or terminate all service, maintenance, or other contracts relating to the operations of the Property, but subject to approval of Plaintiff for contracts in excess of $5,000.00, with no

further obligation or liability, including the liability to pay any termination fee under such terminated contracts. All such contracts are to be terminated upon a sale or disposition of the Property or termination of the receivership, with no further obligation or liability, including the liability to pay any termination fee under such terminated contracts;

o.  to provide a financial report (including, an income and expense statement, balance sheet and a cash flow analysis) on a monthly basis to Plaintiff pertaining to the operations of the Property during the immediately preceding month.

The Receiver may apply to the Court for instructions whenever the Receiver deems it necessary to do so.

6.    The Receiver shall be authorized to request and to receive from Plaintiff, from time to time, advances of funds (collectively, "Advances") that are deemed necessary by the Receiver for the Receiver's preservation, management, marketing, safeguarding, insurance, operation, or repair of the Collateral, including, without limitation, premiums for insurance and amounts needed to make necessary and essential repairs to the Property or any portion thereof, all of which Advances may be made or not made by Plaintiff at such times and in such amounts as Plaintiff may elect in its sole discretion. For the avoidance of doubt, nothing herein shall require or otherwise mandate that the Plaintiff make any Advances to the Receiver or otherwise. Plaintiff shall be authorized, but not required, to apply Revenues received from the Receiver first to the satisfaction of the outstanding Advances until such Advances are paid and satisfied in full. Nothing in this Order shall require the Receiver to advance funds other than from the Revenues without a bond or security for payment satisfactory to the Receiver.

7.      Plaintiff shall be authorized, at any reasonable time or times, to enter upon the Property or any portion thereof for the purpose of inspecting and taking inventory of any of the Collateral, including all Records; conferring with officers, employees, or agents of the Receiver; and reviewing and making copies of any and all of the Records and any other documents at any time in the possession, custody or control of the Receiver. The Receiver shall (i) within sixty (60) days from entry of this Order, prepare a budget containing the estimated revenues and expenses of the Receiver relating to its services hereunder and provide a copy of same to Plaintiff, who shall have an opportunity to file an objection with the court with respect to the reasonableness of the expenses on the budget, and (ii) thereafter each December 1st of the preceding year. By virtue of the entry of this Order alone, Plaintiff shall not be deemed to be in possession or control of any of the Collateral, or to have asserted any supervisory control or decision-making authority with respect to the management, operation, protection or maintenance of any of the Collateral, and Plaintiff shall not be deemed to have assumed any obligation under the Borrower's agreements with any third parties and shall not be liable for the control, use, maintenance, repair, or operation of any of the Collateral. Upon reasonable prior notice to the Receiver or Receiver's counsel, all officers, attorneys and authorized representatives of Plaintiff shall be entitled to review, inspect and copy any of the Records during normal business hours.

8.      Within a reasonable time after taking possession of the Property, Receiver shall take reasonable measures to secure the Property against intrusion by trespassers and against the risk of fire posed by any unsecured items on the Property.

9.      The Borrower, any affiliates of the Borrower, all of their respective managers, officers, directors, agents, representatives, and employees, and all other persons acting at the direction of or in concert with any of them, and anyone who receives notice of this Order by

service or otherwise, including providers of insurance and any utility company, shall be, and each of them is hereby, restrained and enjoined from (i) transferring, selling, seizing, encumbering, or otherwise taking action against or disposing of any of the Collateral, (ii) interfering in any way with the Receiver's use, occupancy, maintenance, or operation of any of the Collateral, (iii) withdrawing Revenues derived from the operation of the Collateral, (iv) paying or transferring Revenues other than to the Receiver, (v) removing, disposing of, destroying, concealing, changing or altering any of the Records, or (vi) terminating, canceling or otherwise affecting insurance coverage or utility service relating to any of the Collateral.

10.    The Borrower, any affiliates of the Borrower, all of their respective managers, officers, directors, agents, representatives and employees, and all other persons acting at the direction or in concert with any of them, and anyone who receives notice of this Order by service or otherwise, are hereby ordered to immediately (i) turn over to the Receiver possession of all of the Collateral and proceeds thereof, any Collateral previously removed from the Property by the Borrower or any of the Borrower's affiliates or insiders, and the Records, (ii) pay over to the Receiver all cash proceeds of Collateral (including, without limitation, any Revenues) in the custody, possession or control of any of them, (iii) turn over to the Receiver all keys to all buildings, safes, deposit boxes, or other safeguarded places on or about the Property and any tangible or intangible items of Collateral; and (iv) cooperate with and assist the Receiver when requested by the Receiver and furthermore take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the performance of the Receiver's duties. From and after the date of entry of this Order, any payments on account of the Collateral shall be made solely to (i) Plaintiff, to the extent that Plaintiff elect to exercise its right to notify account debtors to pay Plaintiff directly, or (ii) the Receiver.

11.     The Receiver shall provide to Plaintiff monthly reporting as to the financial operations of the Collateral. For its services, the Receiver is hereby authorized to pay itself, from proceeds of the Collateral or from Advances reasonable compensation at the rates as detailed in the attachment to the Motion, including the Receiver's monthly fee of $6,000.

12.     The Receiver is authorized to register this Order with the appropriate government offices and courts and to serve this Order on any person or entity whom the Receiver reasonably believes to be in possession or control of Collateral.

13.     The Receiver is hereby given the power and authority usually held by receivers and reasonably necessary to accomplish the purposes of this receivership including, without limitation, the specific power to take possession of, operate under and have authority over all licenses, permits, or other government issued documents necessary for the continued operation of the Hotel. This shall include, if applicable, liquor licenses or permits even if the license/permit is not issued in the name of the Defendant. If the issuing agency requires that the Receiver apply for a new license, permit, or other document, the Receiver shall be allowed to continue to operate under the current permit until the new one is issued to ensure no disruption of service occurs. If applicable, Defendant and its affiliates and agents shall: (i) cooperate in the transfer of the liquor licenses to the Receiver; (ii) execute and deliver such documentation and certificates as are necessary or required to operate, transfer, or cancel the liquor licenses; and (iii) not engage in any acts that would interfere with the Receiver's operation, transfer, or cancellation of the liquor licenses.

a.     Receiver is authorized to hire employees at the Property and pay such employees in accordance with all applicable laws, without any liability to the Receiver. Defendant or their property manager shall terminate any and all employees at the Property

and such termination shall be in compliance with any applicable federal, state or local statutes and regulations including those governing mass layoffs. To the extent Receiver decides to hire any of the dismissed employees, agents or other personnel with respect to the Property, neither Receiver nor the receivership estate shall be liable for any claims of such employees, agents, or other personnel that arose prior to the date and time of the entry of this Order. Defendant or any management companies engaged by Defendant (as appropriate) will be solely and exclusively responsible for (a) any claims or liabilities that arose prior to the appointment of Receiver that are in any way related to an employee's employment with or separation from Defendant or any management companies engaged by Defendant, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans, and (b) liabilities existing prior to Receiver's appointment related to the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. § 2101, *et seq.*, (the "<u>WARN ACT</u>") and liabilities existing prior to Receiver's appointment related to the Consolidated Omnibus Budget Reconciliation Act (COBRA), or similar state statutes or regulations.

b.    Receiver is authorized to issue demands, in the name of the receivership estate, upon public utilities that Receiver determines provide services to the Property and to transfer such services, together with any deposits held by the utility, to the exclusive control of Receiver. Such utilities shall be prohibited from demanding that Receiver deposit additional funds in advance to maintain or secure services. Receiver has the power to procure or maintain appropriate utility services for the Property;

c.    Receiver is authorized to pay only current operating expenses associated with the Property incurred by Receiver subsequent to its appointment, including, without

limitation, Receiver's fees and administrative expenses. Receiver may not use funds of the receivership estate to pay any bills for goods or services contracted for or provided in connection with the Property, or to Defendant and/or their agents, prior to the date of this Order, unless such payment is reasonably necessary or beneficial to enable Receiver to continue to operate the Property as determined by Receiver in its sole discretion;

14.     Receiver is authorized to determine whether adequate insurance is in place, and if not, to order and pay for such insurance from available funds; provided that such insurance shall, at a minimum comply with the loan documents. Receiver shall be the named insured or be an added named insured. Plaintiff shall be named as an additional insured on all such insurance policies. Receiver is authorized in its discretion to terminate any existing policies and to procure policies of insurance as are customary for similarly situated properties and as it deems necessary. Any refund or return of an unearned premium shall be paid to Receiver and be property of receivership estate. No insurance company shall be permitted to terminate coverage or refuse coverage for the Property based upon prior unpaid premiums, claims history or because of the appointment of the Receiver pursuant to this Order. No insurance company may cancel its existing current-paid policy as a result of the appointment of Receiver, without prior order of this Court. In the event the Collateral is uninsurable, the Receiver may upon motion and further order of the Court, withdraw and be relieved of its duties, and the receivership established herein may be terminated.

15.     Receiver shall be the exclusive manager and leasing agent for the Property. Receiver may negotiate, make and enter into, modify or terminate without payment of liquidated damages or penalties, leases, contracts, license agreements or any other agreements affecting any part or all of the Property. However, Receiver may not execute any amendment, modification or

new contract, lease or agreement for an amount exceeding $5,000.00 (other than ordinary and necessary trade accounts payable or for those expenditures ordinarily and necessarily incurred in the operation of the Property) or a period exceeding one year without Plaintiff's approval.

16.     Subject to the approval of the Court and the Plaintiff, Receiver is authorized to enter into a license (or franchise) agreement (a "License Agreement"), or to operate the Property under an assignment of any existing license agreement with any existing licensor ("Licensor"), during the pendency of the receivership, under terms satisfactory to Receiver and Plaintiff, for the operation of the Property. Notwithstanding any provision to the contrary, Receiver is authorized to pay license fees, all service and technology and other fees, charges and costs included in and part of the operation and management of the Property, including without limitation marketing and advertising costs and expenses as part of the operation of the Property. Receiver is also authorized to communicate, negotiate, or otherwise deal with Licensor with regard to any Defendant's performance under any applicable license agreement, including but not limited to curing any possible default or renewing such agreement. Receiver shall have the option to cure any existing defaults under any governing license agreement, but shall not have the obligation to do so. Nor shall Receiver be obligated to pay termination fees or liquidated damages under any governing license agreement.

17.     Receiver may communicate with Licensor, and Licensor is authorized to provide to Receiver all such information as Receiver may reasonably request, regarding Licensor's prior or continuing arrangements or work with Defendant, including but not limited to financial information, written membership or other agreements between Licensor and Defendant. Receiver is also authorized to request and receive from Licensor all information, materials and benefits of online and other reservation systems, Licensor's systems and intellectual property.

18.     Receiver is further authorized, in the exercise of its reasonable discretion and with Plaintiff's approval, to terminate any license arrangement with Licensor and to continue or discontinue operations of the Property as it may determine is reasonable under the circumstances.

19.     Receiver may pay any taxes due in connection with the operation of the Property and, with Plaintiff's consent, appeal any past, present or future assessments by the taxing authorities. To the extent permitted by the Internal Revenue Service regulations, Receiver may obtain its own tax identification, sales tax, reseller and similar numbers and accounts and prepare and file tax returns arising in connection with the operation and management of the Property as may be required by law. The responsibility for such filings and payments prior to the appointment of Receiver lies exclusively with Defendant and their agents, employees, and representatives, as applicable. Receiver and Defendant, as the case may be, shall provide to the other copies of any tax returns filed with respect to the Property. Receiver shall not be required to prepare and file any tax returns for Defendant or affiliates (including without limitation, income, personal property, commercial activity, gross receipts, sales and use or other tax returns) other than to provide Defendant with information in Receiver's possession that may be necessary for Defendant or their affiliates to prepare and file their tax returns. Defendant shall cooperate and provide to Receiver any information needed to file any tax returns for the Property.

20.     With the approval of the Court and the Plaintiff, Receiver is hereby authorized to sell all or part of the Property. Receiver may, upon the prior written consent of the Plaintiff, and without prior Court authorization, engage broker(s) and related professionals to market the Property for sale. The final purchase and sale agreement must be approved by Plaintiff and the Court. Receiver shall provide notice of any proposed sale of the Property to Macon-Bibb County (the "County") by giving notice to Macon-Bibb County Department of Code Enforcement, 700

Poplar Street, Suite 100, Macon, GA  31201 and Akin, Webster & Matson, P.C., P.O. Box 1773, Macon, GA  31202. Further, with respect to any proposed sale of the Property, Receiver shall comply with the notice requirements of IPMC § 107.6 by (i) providing any prospective purchaser, grantee, transferee, mortgagee or lessee a copy of Citation No. 789622 issued by Macon-Bibb County Department of Code Enforcement on July 5, 2022 ("Citation") and the Consent Order Resolving Code Violations entered in the Municipal Court of Macon-Bibb County in Case No. 22-MUNI-001475 resolving the Citation and (ii) providing any prospective purchaser, grantee, transferee, mortgagee or lessee any citations issued by Macon-Bibb county Department of Code Enforcement with respect to the Property subsequent to the entry of this order.

21.     Nothing stated herein shall preclude Plaintiff from electing to post the Property for nonjudicial foreclosure sales and conducting those sales, without prior permission from the Court, as provided in this Order.

22.     This receivership will continue for such time until the Court enters an order terminating it and discharging Receiver; provided that to the extent Receiver no longer desires to serve in that capacity, upon 30 days' prior written notice to Plaintiff and Defendant, Receiver may apply to the Court for termination of its appointment. Notwithstanding the aforesaid, in the event of a sale of the Loans or control over the Loan Documents referenced in Plaintiff's Verified Complaint, then Receiver may file an emergency petition with this court seeking to withdraw and be terminated as Receiver within ten (10) days of filing such emergency petition. Within 45 days of the completion of its duties pursuant to this Order, Receiver shall file a Notice of Termination and Request for Discharge Order seeking discharge by the Court from its responsibilities as Receiver herein. The Notice of Termination and Request for Discharge Order

shall include a final Report, summarizing all of Receiver's activities, providing a final accounting, and reporting the final disposition of any legal claims, and Receiver may incur legal costs and fees relative to all of these actions. To the extent that the WARN ACT or similar state or municipal statue, ordinance, or regulation applies, Plaintiff shall provide Receiver at least 75 days' notice of the closing of any such foreclosure sale such that Receiver is able to comply with applicable notice requirements to the employees under those statutes and/or regulations. If for any reason Receiver is discharged prior to this Court's entry of judgment of foreclosure or the dismissal of this case, Plaintiff shall be entitled to designate a successor receiver. Upon termination of the Receivership, Receiver shall have the right to retain sufficient funds to pay its final expenses and fees. In the event that funds on hand at the time of termination are insufficient, Plaintiff shall fund the shortfalls.

23.     Upon foreclosure of the Property or the dismissal of the action upon which this receivership is based, Receiver shall turn over possession of the Property to the then owner of the Property, and Receiver shall petition the Court to discharge Receiver as noted herein, provided that Receiver shall have first submitted its final report and accounting. Upon approval of Receiver's final accounting and termination by the Court, all lessors, lessees, customers, principals, investors, suppliers and creditors who are not a named party to the action shall be barred from seeking to enforce any claim, right or interest against Receiver and the indemnification of Receiver by the receivership estate shall survive the termination of this receivership.

24.     If the Receiver determines that the aggregate amount of Revenues and Advances available to the Receiver are or will be insufficient to pay the reasonable and necessary expenses of maintaining, preserving, and operating the Collateral in compliance with applicable law and

this Order, then the Receiver may, on not less than five (5) days written notice to Plaintiff, file with the Court an emergency motion to terminate the Receiver's further responsibilities to serve as receiver hereunder, whereupon, subject to a surrender of all of the Collateral to Plaintiff and the filing of a final report regarding the receivership with the Court, the Receiver shall be discharged only upon entry of an Order of the Court granting any such motion to terminate filed by the Receiver.

25.     The Clerk of the Court is authorized and directed to make certified copies of this Order, at the Receiver's request, for use by the Receiver.

26.     Except for an act of gross negligence or willful misconduct, the Receiver and all persons engaged by or employed by the Receiver shall not be liable to HDDA or its affiliates for any loss or damage by reason of any act performed or omitted to be performed by them in connection with the discharge of their duties and responsibilities under this Order. Other than fraud, no risks or obligations incurred by Receiver in connection with receivership shall be the personal risk or obligation of Receiver but shall be a risk or obligation of receivership estate. Without limiting any other rights or immunities which Receiver may have at law or in equity, Receiver shall not have any liability to HDDA or its affiliates for acts or omissions arising within the scope of the receivership or this Order, except to the extent that liability arises from the gross negligence or willful misconduct of Receiver. Those parties acting on behalf of Receiver in connection with this Order shall be protected and privileged, having the same protections of the Court as Receiver.

27.     The receivership estate shall indemnify and hold harmless Receiver and its current and former affiliates, directors, officers, partners, agents, employees, consultants, subcontractors, representatives or control persons from any claims made by persons not a party

to this Order, which claims are related to or arise out of the actions and operations of this receivership, except in a case where Receiver has acted outside the scope of the receivership authority, committed fraud, intentionally misrepresented Receiver's ministerial authority as Receiver, or acted in a grossly negligent manner. In the event a suit is filed against the Receiver, or a related entity of the Receiver, over an issue arising out of this action, except as conditioned above and excluding actions claims for fraud, willful misconduct, or gross negligence, Plaintiff shall reimburse Receiver for the fees and costs of defending such action, including any appeals thereof to final resolution and award of judgments to the extent such fees and costs are not reimbursed by any applicable insurance.

28.    Notwithstanding anything to the contrary in this Order, all actions to foreclose or continue to foreclose upon any or all of the Collateral, including, without limitation, the Property and any portion thereof, or to exercise any power of sale granted in any deed to secure debt, collateral assignment or other document executed and delivered by the Borrower, including, but not limited to, such institution, consummation and confirmation of foreclosure proceedings pending before the entry of this Order, are hereby stayed, pending further order of this Court. Any party, other than the Receiver, who wishes to exercise any rights granted in any document executed and delivered by the Borrower may move this Court for relief from this Order, provided that the Receiver and Plaintiff shall have no less than twenty-one (21) days to object to such motion.

29.    Notwithstanding anything to the contrary contained in this Order, any party in interest with standing to do so may request, by written motion filed with the Court and with at least ten (10) days' prior notice to the other parties, a status conference or any other appropriate relief as to the results of the Receiver's management and liquidation of the Collateral, the

20

necessity or appropriateness of continuing the receivership, or whether any of the terms and conditions of this Order should be amended or modified in any way.

30.     The Court shall hold a further hearing on the Motion on a date and time to be scheduled by the Court, at which time the Court shall consider the necessity or appropriateness of continuing the receivership, or whether any of the terms and conditions of this Order should be amended or modified in any way. The terms of this Order shall not prejudice the parties with respect to the relief or defenses to the Motion they may assert at this further hearing.

31.     This Court shall retain jurisdiction of this matter for all purposes, including amending and enforcing any of the provisions of this Order. This Order is effective when entered.

        **SO ORDERED**, this 27th day of July, 2023.

S/ Marc T. Treadwell
_____
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

PREPARED AND SUBMITTED BY:

**THOMPSON HINE LLP**

*/s/ Sean A. Gordon*
Sean A. Gordon
Georgia Bar No. 777350
Austin B. Alexander
Georgia Bar No. 926059
Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia 30326
Telephone: 404-541-2900
Facsimile: 404-541-2905
*sean.gordon@thompsonhine.com*
*austin.alexander@thompsonhine.com*

*Attorneys for Plaintiff HDDA, LLC*