IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| HDDA, LLC, successor in interest to ACCESS POINT FINANCIAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SANGHA HOSPITALITY, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO. 5:22-cv-21 (MTT) |

## ORDER

Plaintiff HDDA, LLC ("HDDA"), as successor in interest to Access Point Financial, LLC, filed this lawsuit seeking to collect Promissory Notes owed by Defendant Sangha Hospitality, LLC ("Sangha"), plus attorney fees and costs.  Docs. 1; 4.  Sangha failed to answer and is in default.  Docs. 17; 18.  Pursuant to Fed. R. Civ. P. 55(b), HDDA now moves for entry of Default Judgment against Sangha in the amount of $5,669,275.49 plus interest and attorney fees and expenses in the amount of $245,028.18.  Doc. 22.  For the reasons below, HDDA's motion (Doc. 22) is **GRANTED**.

### I. BACKGROUND

The allegations of the complaint are deemed admitted by way of Sangha's default and establish the following.  In January 2018, Access Point Financial, Inc., now Access Point Financial, LLC ("Access Point"), extended two loans to Sangha totaling $3,900,000.00.  Doc. 4 ¶¶ 8-16, 18-27.  These amounts were loaned to Sangha under

two separate loan agreements and accompanying documents: (1) an Equipment Loan,[1] and (2) a Mortgage Loan.[2]  *Id.*  Promissory notes for each were also executed and guaranteed by Sangha's principals Rupinder Sangha and Harleen Sangha ("Guarantors").[3]  *Id.* ¶¶ 10-16, 18-27.  The Guarantors and Sangha defaulted on the Loans by failing to make payment when due.  *Id.* ¶ 30.

On April 1, 2020, Sangha, the Guarantors, and Access Point entered into forbearance agreements, whereby Access Point agreed to forbear collection of all monthly payments due under the Loans from April 1, 2020 until June 30, 2020.  *Id.* ¶¶ 33-35, 37-39; 4-11; 4-12.  Once the forbearance period expired, Sangha and the Guarantors failed to resume monthly payments.  *Id.* ¶ 41.  On May 7, 2021, Access Point notified Sangha and the Guarantors by letter that they were in default and demanded payment in full under the original terms of the loan documents.  Docs. 4 ¶¶ 42-44; 4-13; *see* O.C.G.A. § 13-4-4.  Sangha and the Guarantors were also notified, pursuant to O.C.G.A. § 13-1-11, that Access Point would seek attorney fees as permitted under the Mortgage and Equipment Notes if payment in full was not made

---

[1] Under the Equipment Loan, Access Point loaned Sangha $3,400,000.00 to refinance existing debt secured by Sangha's existing equipment and to purchase new furniture, fixtures, and equipment in connection with refurbishing a hotel located at 108 1st Street, Macon, Georgia 32102.  Doc. 4 ¶ 9-12. Along with the Equipment Loan, Sangha and the Guarantors executed: a Promissory Note ("Equipment Note"), Equipment Loan and Security Agreement, and Guaranty Agreement.  *See* Docs. 4 ¶¶ 10-15; 4-1; 4-2; 4-5.

[2] Under the Mortgage Loan, Access Point loaned Sangha $500,000.00, which was secured by the hotel. *See* Doc. 4 ¶ 18.  Along with the Mortgage Loan, Sangha and the Guarantors executed: a Promissory Note ("Mortgage Note"), Deed to Secure Debt and Security Agreement, Assignment of Leases and Rents, and Guaranty Agreement.  *See* Docs. 4 ¶¶ 19- 26; 4-6; 4-7; 4-8; 4-9.

[3] Access Point subsequently assigned the Equipment Loan and the Equipment Loan Documents to Access Point Funding I 2017-A, LLC ("APF Funding"), on a servicing retained basis.  Doc. 4 ¶ 17. Access Point assigned the Mortgage Loan and the Mortgage Loan Documents to APF-CRE I, LLC ("APF-CRE"), also on a servicing retained basis.  Doc. 4 ¶ 28.  APF Funding and APF-CRE then assigned the Loans and the Loan Documents back to Access Point.  Doc. 4 ¶¶ 36, 40.

within ten days.  Doc. 4 ¶¶ 43-44.  After failing to make payment in full, Access Point assigned the Loans and all accompanying documents to HDDA.  *Id.* ¶¶ 45, 49.

On January 11, 2022, HDDA filed this action alleging claims for breach of contract and attorney fees and costs.[4]  Docs. 1; 4.  After being served on January 24, 2022, (Doc. 7) Sangha filed a voluntary, chapter 11 bankruptcy petition.  Doc. 9; *see also In re* Sangha Hosp., LLC, No. 22-50094 (Bankr. M.D. Ga.).  Sangha's bankruptcy was dismissed on June 12, 2023.  Doc. 10.  Once the automatic stay terminated under 11 U.S.C. § 362, Sangha failed to answer or otherwise appear in this case.  HDDA requested entry of default against Sangha, which was granted on July 24, 2023.  *See* Docs. 17; 18.  The Court also granted HDDA's request to appoint a receiver over Sangha's receivership estate.  Doc. 21.  HDDA now moves for entry of Default Judgment against Sangha pursuant to Fed. R. Civ. P. 55(b).  Doc. 22.

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court must enter a party's default if that party's failure to plead or otherwise defend an action against it "is shown by affidavit or otherwise."  After default has been entered, the Clerk may enter a default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation," as long as the party is not a minor or incompetent and has not made an appearance.  Fed. R. Civ. P. 55(b)(1).  In all other cases, the plaintiff must apply to the Court for a default judgment.  Fed. R. Civ. P. 55(b)(2).  The

---

[4] In the alternative to its breach of contract claims, HDDA asserts claims for unjust enrichment and money had and received.  *See* Doc. 4 ¶¶ 71-84.  Because the Court finds Sangha liable for breach of contract, those claims are not considered.  *See Continental Cas. Co. v. Trucks, Inc.*, 2011 WL 5325537, at *2, n. 2 (M.D. Ga. Nov. 3, 2011) ("Because the Court grants default judgment as to the breach of contract claims, the Court does not need to consider Plaintiffs' alternative unjust enrichment and account stated claims."); *Huddleston v. Smith*, 2010 WL 1410556, at *5 n.1 (N.D. Ga. Mar. 30, 2010) (declining to reach alternative unjust enrichment claim after granting default judgment as to breach of contract).

Court must hold an evidentiary hearing to determine damages unless all the essential evidence is already in the record. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("We have held that no such hearing is required where all essential evidence is already of record."); *see also* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings[.]").

After the Clerk's entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations in the complaint. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[5]  However, an entry of default against the defendant does not establish that the plaintiff is entitled to a default judgment. The defendant is not deemed to admit facts that are not well-pleaded or conclusions of law. *Id*. "The Court must consider whether the unchallenged facts constitute a legitimate cause of action, because the party in default does not admit a mere conclusion of law. In considering any default judgment, the Court must consider (1) jurisdiction, (2) liability, and (3) damages." *Johnson v. Rammage*, 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)). The defendant is also not deemed to admit the plaintiff's allegations relating to the amount of damages. *Patray v. Nw. Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]").

### III. JURISDICTION

---

[5] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

To enter a valid default judgment, the Court must have both personal and subject matter jurisdiction. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." (alteration in original)).

First, the Court has subject matter jurisdiction over HDDA's claims based on diversity or "alienage" jurisdiction. 28 U.S.C. § 1332. HDDA alleged it is a limited liability company organized under the laws of Delaware. Doc. 4 ¶ 4. HDDA's sole member is WCP APF Sub Holdings, Inc., a corporation organized under the laws of Delaware with its principal place of business in New York. *Id.* Thus, for purposes of diversity jurisdiction, HDDA is a citizen of New York and Delaware. HDDA also alleged the amount in controversy exceeds $75,000. *Id.* ¶ 6. Sangha is an alleged limited liability company organized under the laws of Georgia, with its principal place of business in Macon, Georgia. *Id.* ¶ 5. Rupinder Sangha is Sangha's only member and a citizen of Canada where he resides. *Id.* Thus, for purposes of diversity jurisdiction, Sangha is a citizen of Canada and is completely diverse from HDDA. *See* 28 U.S.C. § 1332.

Second, the complaint also sufficiently alleges that the Court has personal jurisdiction over the defendant. Personal jurisdiction can be general or specific. General jurisdiction allows all kinds of suits against a defendant, but only in states where the defendant is "at home" or, in most cases, is served with process. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("an individual is subject

to general jurisdiction in her place of domicile"). Specific jurisdiction, on the other hand, must arise out of the events or transactions underlying the claim that forms the basis of the lawsuit. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). For specific jurisdiction to be proper, "the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

Here, HDDA adequately alleged both general and specific jurisdiction over Sangha. General jurisdiction exists because Sangha was served with process in this action through its registered agent located in Georgia.[6] Doc. 7. Specific jurisdiction also exists because Sangha purposefully established minimum contacts with Georgia by organizing as an LLC under Georgia law and establishing its principal place of business in Macon, Georgia. Doc. 4 ¶ 5. Moreover, the contract at issue in this case was largely made, negotiated, and to be performed in Georgia. *Id.* ¶ 8-29, 32-44. Thus, there is a sufficient nexus between Sangha's contacts and this litigation. The Court has both general and specifical personal jurisdiction over Sangha.

In sum, the Court has subject matter jurisdiction over this action. The Court also has general and specific personal jurisdiction over HDDA and Sangha.

---

[6] As a condition of doing business within the state, Georgia law requires corporations and LLCs to consent to personal jurisdiction by designating a registered agent for service of process in Georgia. O.C.G.A. §§ 14-2-202, 14-11-209. A five-justice Supreme Court majority recently upheld a similar law under the Due Process Clause and its decision in *Penn. Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917). *See Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2040 (2023) (plurality opinion) (reaffirming "due process allows a corporation to be sued on any claim in a State where it has appointed an agent to receive whatever suits may come"); *see also Fuld v. Palestine Liberation Org.*, 2023 WL 5808926, at *9 (2d Cir. Sept. 8, 2023) (discussing *Mallory* at length).

# IV. DISCUSSION

HDDA's complaint asserts claims for "breach of contract" and seeks damages plus attorney fees and costs under O.C.G.A. § 13-1-11.  Docs. 1; 4.  HDDA has adequately alleged liability to its breach of contract claims and is entitled to attorney fees and costs under O.C.G.A. § 13-1-11.  HDDA has also submitted sufficient evidence to support an award of $5,669,275.49 plus interest in breach of contract damages and $245,028.18 in attorney fees and expenses.

## A. Sangha's Liability

### 1. Breach of Contract

By way of default, it is established that Georgia law applies to HDDA's claim.[7] Docs. 4-1 at 5; 4-6 at 7.  "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  *SAWS at Seven Hills, LLC v. Forestar Realty, Inc.*, 342 Ga. App. 780, 784, 805 S.E.2d 270, 274 (2017).  Here, HDDA specifically alleged Access Point entered agreements with Sangha extending two loans totaling $3,900,000.00, which were also secured by separate promissory notes guaranteed by Mr. and Mrs. Sangha.  Docs. 4 ¶¶ 8-16, 18-27; 4-1; 4-6.  Each loan was given in exchange for Sangha's promise of repayment.  Docs. 4 ¶¶ 9-15, 18-16; 4-1; 4-6.  When payment on those loans became due, Sangha and the Guarantors failed to pay.  Doc. 4 ¶¶ 30, 41.  This constitutes a breach of contract.[8]  As a result, HDDA, as successor in

---

[7] Paragraph 9 of the Equipment Note and Section XI of the Mortgage Note provide each is governed by Georgia law.  Docs. 4-1 ¶ 9; 4-6 at 7.  Promissory notes and guaranties are contracts.  *Trendmark Homes, Inc. v. Bank of N. Ga.*, 314 Ga. App. 886, 726 S.E.2d 138 (2012).  HDDA's claims are governed by Georgia law.

[8] HDDA specifically established the existence of at least two contracts between itself, as successor in interest to Access Point, and Sangha—i.e., the Equipment Loan and the Mortgage Loan.  Docs. 4 ¶¶ 9-

interest to Access Point, suffered financial loss and damages. Docs. 4; 22-1; 22-2; 22-3. These allegations are sufficient to establish Sangha's liability and entitle HDDA to default judgment on its breach of contract claim against Sangha.

*2. Attorney Fees and Costs*

HDDA has also established Sangha's liability for HDDA's costs and attorney fees. Under O.C.G.A. § 13-1-11(a), obligations "to pay attorney fees upon any note or other evidence of indebtedness" are valid.[9] To be enforceable: (1) the note's terms must include an obligation to pay attorney fees; (2) the debt owed under the note must have matured; (3) notice must be given to the debtor informing her that if she pays the debt within ten days, she may avoid attorney fees; (4) the ten day period must expire without payment of principal and interest in full; and (5) the debt must thereafter be collected by or through an attorney. *See TermNet Merch. Servs., Inc. v. Phillips*, 277 Ga. 342, 343-44, 588 S.E.2d 745, 747 (2003).

Here, the terms of the Equipment and Mortgage Notes include an obligation to pay attorney fees. Docs. 4-1 at 3; 4-6 at 6. The Loans matured upon acceleration by Access Point as provided in the loan documents. *See Branch Banking & Trust Co. v. Pine Timber Wood Prod.*, 2014 WL 1783948, at *5 (M.D. Ga. May 5, 2004). On May 7, 2021, Sangha and the Guarantors were notified by letter of Access Point's intent to seek attorney fees for collection of the Loans if payment was not made in full within ten

---

15, 18-16; 4-1; 4-6. Each concerned a financial loan, which was to be repaid by Sangha according to the terms of each promissory note and the accompanying documents. Docs. 4 ¶¶ 9-15, 18-16; 4-1; 4-6. Access Point and Sangha mutually agreed to the contract terms by signing the notes and guaranties. Docs. 4-1; 4-6. Sangha breached the contracts when it failed to pay the amounts due. Doc. 4 ¶¶ 30, 41.

[9] O.C.G.A. § 33-1-11 provides: "Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity...." O.C.G.A. § 33-1-11(a).

days.  Docs. 4 ¶¶ 42-44; 4-13.  Sangha and the Guarantors have yet to make payment in full, and the debts are now being collected through HDDA's undersigned counsel.  These allegations are sufficient to entitle HDDA to recover from Sangha its attorney fees and costs incurred to collect on the Loans.

**B. HDDA's Damages**

*1.  Breach of Contract Damages*

HDDA seeks an award against Sangha for breach of contract damages totaling $5,669,275.49 plus interest.  Doc. 22.  Because Sangha and the Guarantors failed to perform under the Loan Agreements, Sangha is liable to HDDA.  An evidentiary hearing is not necessary to calculate damages because all the necessary evidence is in the record and capable of being made certain.[10]

First, HDDA has presented sufficient evidence that as of August 4, 2023, the amount owed on the Equipment Loan is $4,910,674.59.  Docs. 22-2; 22-3 ¶¶ 12, 14.  This includes the principal balance in the amount of $3,065,240.14, non-default interest in the amount of $738,319.39, default interest in the amount of $919,911.14, late charges in the amount of $118,553.92, a prepayment premium in the amount of $68,000.00, UCC fees in the amount of $400.00, and a payoff quote preparation fee in the amount of $250.00.  Docs. 4-1; 22-3 ¶¶ 12, 14 ("Exhibits 3 and 4").  Per diem interest continues to accrue on the Equipment Loan after July 31, 2023, and through judgment at $1,532.62 per day.  Docs. 4-1; 22-3 ¶¶ 13-14.

---

[10] Suits on promissory notes are particularly well-suited for entry of default judgment for liquidated damages.  *See Annon Consulting, Inc. v. BioNitrogen Holdings Corp.*, 650 F. App'x 729, 733 (11th Cir. 2016) (per curiam) (holding district court did not abuse its discretion in granting default judgment to holder of promissory note without first conducting evidentiary hearing because damages were "capable of mathematical computation").

Second, HDDA has also presented sufficient evidence that as of August 4, 2023, the amount owed on the Mortgage Loan is $758,600.90.  Docs. 22-2; 22-3 ¶¶ 20, 22.  This includes the principal balance in the amount of $510,025.28, non-default interest in the amount of $157,592.21, default interest in the amount of $76,888.06, late charges in the amount of $2,645.35, a prepayment premium in the amount of $10,000.00, UCC fees in the amount of $600.00, a release fee in the amount of $400.00, recording fees in the amount of $200.00, and a payoff quote preparation fee in the amount of $250.00.  Docs. 4-6; 22-3 ¶¶ 20, 22 ("Exhibits 5 and 6").  Per diem interest continues to accrue on the Mortgage Loan after July 31, 2023, and through judgment at $212.51 per day.  Docs. 4-6; 22-3 ¶¶ 21-22.

Thus, HDDA is entitled to an award for breach of contract damages in the amount of $5,669,275.49 plus interest.  Per diem interest shall accrue on the Equipment Loan after July 31, 2023, and through judgment at $1,532.62 per day.  Per diem interest shall also accrue on the Mortgage Loan after July 31, 2023, and through judgment at $212.51 per day.

*2.  Attorney Fees and Costs*

HDDA seeks an award of costs and attorney fees under O.C.G.A. § 13-1-11 totaling $245,028.18.  Docs. 4 ¶¶ 83-87; 24 ¶¶ 6-8.  HDDA, in conjunction with its predecessor in interest, Access Point, complied with the requirements of § 13-1-11, so HDDA is entitled to attorney fees.  *TermNet Merch. Servs.,* 277 Ga. at 344-45, 588 S.E.2d at 747 (holding trial courts are without discretion to deny fees under § 13-1-11 when statutory conditions are met).  Because the Mortgage and Equipment Notes limit

-10-

the payment of attorney fees to those actually incurred, § 13-1-11(a)(1) controls.[11] Docs. 4-1 at 3; 4-6 at 6. Section13-1-11(a)(1) provides for the enforcement of attorney fees provisions in promissory notes "up to but not in excess of 15 percent of the principal and interest owing" on the note. The statute does not mandate "the recovery of 15 percent attorney fees in every case." *Hamilton State Bank v. Kelly Capital Investments, LLC*, 335 Ga. App. 252, 264-65, 779 S.E.2d 757, 767 (2015) (quoting *S & A Indus., Inc. v. Bank of Atlanta*, 247 Ga. App. 377, 383, 543 S.E.2d 743, 749 (2000)).

Here, Sangha agreed that if HDDA, as successor in interest to Access Point, hired an attorney to collect the Equipment Note, Sangha would "pay all costs and expenses" including "reasonable attorney[] fees … *actually incurred*." Docs. 4-1 at 3; 22-2 at 9 (emphasis added). Sangha also agreed that should the Mortgage Note be collected "through any legal, bankruptcy, receivership, [] or other court proceedings," Sangha would pay "reasonable attorney[] … fees and collection costs … *incurred*." Docs. 4-6 at 6; 22-3 at 17 (emphasis added). Under this language, Sangha is obligated to pay only costs and attorney fees actually incurred and established by HDDA up to 15 percent of principal and interest under the Mortgage and Equipment Notes. *Hamilton*, 335 Ga. App. at 265, 779 S.E.2d at 767.

HDDA has presented sufficient evidence that as of July 31, 2023, HDDA and its predecessors in interest incurred fees and costs totaling $245,028.18. Docs. 22-4; 24.

---

[11] Where a promissory note provides for the payment of attorney fees without specifying the percent or any limitation, O.C.G.A. § 13-1-11(a)(2) applies. *See Branch Banking & Trust Co. v. Conner*, 2015 WL 11422298 (N.D. Ga. May 7, 2015) (distinguishing cases involving express limits on recovery from cases without express limitation or restriction). Under §13-1-11(a)(2), the defaulting party is liable for attorney fees and costs in the amount of "15 percent of the first $500.00 of principal and interest owing on such note … and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." O.C.G.A. § 13-1-1(a)(2); *see Austin v. Bank of Am., N.A.*, 293 Ga. 42, 49-51, 743 S.E.2d 399 (2013) (recognizing that the application of § 13-1-11(a)(2) will sometimes result in a windfall).

Based on affidavits executed by counsel, HDDA incurred and seeks reimbursement for hourly fees in the amount of $241,671.85.  Docs. 22-4; 24 ¶ 6.  HDDA also incurred and seeks reimbursement for litigation expenses in the amount $3,356.33.  Docs. 22-4; 24 ¶ 7.  Because the combined costs incurred by HDDA do not exceed 15 percent of principal and interest under the Mortgage and Equipment Notes, HDDA is entitled to an award of attorney fees and expenses totaling $245,028.18.

## V. CONCLUSION

HDDA's motion for default judgment (Doc. 22) is **GRANTED**.  HDDA is awarded breach of contract damages in the amount of: (1) $4,910,674.59 under the Equipment Loan, with prejudgment interest to accrue at $1,532.62 per day after July 31, 2023; and (2) $758,600.90 under the Mortgage Loan, with prejudgment interest to accrue at $212.51 per day after July 31, 2023.  HDDA is also awarded attorney fees and expenses in the amount of $245,028.18.  Accordingly, default judgment is entered against Sangha totaling $5,669,275.49 plus interest, and attorney fees and expenses totaling $245,028.18.  Failure to comply with this order may result in sanctions including a finding of contempt.

**SO ORDERED**, this 26th day of September, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT